**FILED**

**AUG 2 0 2021**

JUDGE JOHN Z. LEE
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

DERRICK WILTZ

No. 18 CR 157

Judge John Z. Lee

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant DERRICK WILTZ, and his attorney, BLAIRE DALTON, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C) and Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with conspiracy to knowingly and intentionally possess with intent to distribute and distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846 (Count One) and distribution of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) (Counts Two, Three, and Seven).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with conspiracy to distribute and to possess with intent to distribute controlled substances, namely, heroin, fentanyl, cocaine and marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

Beginning no later than in or about September 2017, and continuing to in or about March 2018, at Chicago, in the Northern District of Illinois, Eastern Division, defendant and Jonathan Mason conspired with each other and with others to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance; 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-1 [1-(2-phenylethyl)-4-piperindinyll propanamide), a Schedule II Controlled Substance; a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance; and a quantity of a mixture

2

and substance containing a detectable amount of marijuana, a Schedule I Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846.

Specifically, between at least September 2017 and March 2018, co-defendant Jonathan Mason employed defendant as a courier to distribute wholesale quantities of narcotics, including heroin, to customers and co-conspirators on behalf of the Mason drug trafficking organization ("DTO"). Mason ran the DTO out of his residence located on the 6400 block of South Champlain in Chicago, Illinois. Mason kept cutting agents, scales, and a kilo press in his home, which he used to manufacture narcotics after mixing pure narcotics with additives, including fentanyl and black tar heroin. Defendant reported to Mason's residence on a daily basis to assist Mason and others with the distribution of those narcotics.

For example, between September 7, 2017 and September 14, 2017, co-defendant Eduardo Anderson arranged to sell heroin to a person who, unbeknownst to Mason and Anderson, was a cooperating source ("CS-1"). On September 14, 2017, Anderson provided defendant, who was working on behalf of the Mason DTO, with 99.6 grams of heroin intended for CS-1. Mason, Anderson and defendant met with CS-1 at Restaurant A located on the 800 block of East 63rd Street in Chicago, Illinois where Mason, Anderson and defendant sold CS-1 99.6 grams of heroin for $10,000.

On October 18, 2017, Mason, with defendant's knowledge, negotiated to sell CS-1 approximately 110 grams of heroin. Mason also agreed to provide CS-1 with an

additional five grams of heroin to account for a missing quantity of heroin Mason had supplied to CS-1 on September 14, 2017. Defendant drove Mason to the in-person meeting with CS-1 at Restaurant A. Mason provided defendant with 115.4 grams of heroin to distribute to CS-1 and directed defendant to wait for CS-1 in the back of Restaurant A. During the in-person meeting, CS-1 paid Mason $9,350 for the heroin after which Mason directed CS-1 to go to the back of the restaurant to get 115.4 grams of heroin from defendant.

On multiple other occasions, defendant distributed narcotics to co-conspirators and customers at the direction of Mason. For example, on February 7, 2018, co-defendant Mooney placed an order with co-defendant Pugh for 25 grams of heroin, and defendant provided Mooney with that heroin at Mason's residence. On February 9, 2018, Pugh asked Mason to send defendant to deliver narcotics to a customer at a gas station located on 63rd Street and the Dan Ryan expressway in Chicago. Mason directed defendant to make the delivery, and later, defendant delivered the narcotics to the customer. That same day, Pugh asked Mason for additional narcotics. Mason told Pugh he would have defendant deliver the narcotics to Pugh.

Defendant acknowledges that the amount of controlled substances that he distributed or possessed with intent to distribute, and that was reasonably foreseeable to him over the course of the conspiracy, was at least approximately 68 kilograms of heroin, 496 grams of fentanyl and approximately 23 kilograms of cocaine.

The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

### Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

   a. A maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 10 years. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $10,000,000. Defendant further understands that the judge also must impose a term of supervised release of at least five years, and up to any number of years, including life.

   b. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

### Sentencing Guidelines Calculations

8. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and

5

circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

b. **Offense Level Calculations**.

i. The base offense level is 36, pursuant to Guideline § 2D1.1(a)(5) and § 2D1.1(c)(2), because the conspiracy involved the equivalent of at least 30,000 KG but less than 90,000 KG of Converted Drug Weight.

6

ii. The base offense level is decreased by two levels, pursuant to Guideline § 3B1.2(b), because Wiltz was a minor participant in the conspiracy. The offense level is further decreased by three levels pursuant to Guideline § 2D1.1(a)(5)(ii).

iii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

iv. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts

7

now known to the government and stipulated below, defendant's criminal history points equal nine and defendant's criminal history category is IV:

    i.    On or about October 31, 1994, defendant was convicted of robbery in the Circuit Court of Cook County, Illinois, and sentenced to three years' probation. Defendant receives no criminal history points for this conviction, pursuant to Guideline § 4A1.2(e);

    ii.    On or about November 1, 1994, defendant was convicted of theft in the Circuit Court of Cook County, Illinois, and sentenced to ten days' imprisonment. Defendant receives no criminal history points for this conviction, pursuant to Guideline § 4A1.2(e);

    iii.    On or about August 1, 1995, defendant was convicted of possession of other amount of a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to three years' imprisonment. Defendant receives no criminal history points for this conviction, pursuant to Guideline § 4A1.2(e);

    iv.    On or about January 28, 1997, defendant was convicted of robbery in the Circuit Court of Cook County, Illinois, and sentenced to 2 years' imprisonment. Defendant receives no criminal history points for this conviction, pursuant to Guideline § 4A1.2(e).

    v.    On or about January 12, 1998, defendant was convicted of domestic battery and theft in the Circuit Court of Cook County, Illinois, and

sentenced to 50 days' imprisonment. Defendant receives no criminal history points for this conviction, pursuant to Guideline § 4A1.2(e);

  vi. On or about November 15, 1999, defendant was convicted of unlawful use of a weapon, felon in possession, and possession of an amount of a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to 30 months' imprisonment. Defendant receives no criminal history points for this conviction, pursuant to Guideline § 4A1.2(e);

  vii. On or about August 25, 2003, defendant was convicted of unlawful use of a weapon, in the Circuit Court of Cook County, Illinois, and sentenced to six years' imprisonment. Defendant receives three criminal history points for this conviction, pursuant to Guideline § 4A1.1(a);

  viii. On or about February 13, 2007, defendant was convicted of aggravated assault in the Circuit Court of Cook County, Illinois, and sentenced to six months' conditional discharge. Defendant receives no criminal history points for this conviction, pursuant to Guideline § 4A1.2(e);

  ix. On or about August 27, 2008, defendant was convicted of aggravated assault in the Circuit Court of Cook County, Illinois, and sentenced to 45 days' imprisonment. Defendant receives one criminal history point for this conviction, pursuant to Guideline § 4A1.1(c); and

  x. On or about November 14, 2011, defendant was convicted of unlawful use of a weapon in the Circuit Court of Cook County, Illinois, and

sentenced to six years' imprisonment. Defendant receives three criminal history points for this conviction, pursuant to Guideline § 4A1.1(a).

    xi.  Because Wiltz committed the instant offense while under a criminal justice sentence, namely, while on parole for his conviction of aggravated unlawful use of a weapon he receives two criminal history points, pursuant to Guideline § 4A1.1(d).

   d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 28, which, when combined with the anticipated criminal history category of IV, results in an anticipated advisory sentencing guidelines range of 120 to 137 months' imprisonment, pursuant to Guideline § 5G1.1(c)(2), in addition to any supervised release and fine the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 120 months' imprisonment.

   e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation.

Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

   f.  Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Cooperation

10.  Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

11

## Agreements Relating to Sentencing

11. At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1 and 18 U.S.C. § 3553(e), to depart downward from the low end of the applicable guideline range or the statutory minimum sentence, whichever is higher, and shall recommend a sentence that includes a term of imprisonment in the custody of the Bureau of Prisons of 66 percent of the low end of the applicable guideline range or the statutory minimum sentence, whichever is higher. Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guideline range and statutory minimum sentence rests solely with the Court.

12. If the government does not move the Court, pursuant to Guideline § 5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable guideline range and the statutory minimum sentence, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines, and the statutory minimum sentence without any downward departure for cooperation pursuant to

§ 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1 or 18 U.S.C. § 3553(e).

13. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. Before sentence is imposed, the government will move to dismiss the notice of prior conviction relating to defendant filed pursuant to Title 21, United States Code, Section 851.

16. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

### Acknowledgments and Waivers Regarding Plea of Guilty

#### Nature of Agreement

17. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 18 CR 157.

18. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

19. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove

14

prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

   iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

   iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

   v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

   vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of forfeiture, in exchange for the concessions made by the United States in this Agreement. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

20. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

21. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

22. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

24. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

25. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

26. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

27. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

29. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he

understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 8/14/2021

| | |
|---|---|
| SCOTT EDENFIELD<br>Digitally signed by SCOTT EDENFIELD<br>Date: 2021.08.03 14:22:19 -05'00'<br>**JOHN R. LAUSCH, JR.**<br>United States Attorney | *Derrick R Wiltz*<br>**DERRICK WILTZ**<br>Defendant |
| KRISTEN TOTTEN<br>Digitally signed by KRISTEN TOTTEN<br>Date: 2021.07.27 10:56:34 -05'00'<br>**KRISTEN TOTTEN**<br>Assistant U.S. Attorney | *Blaire Dalton*<br>**BLAIRE DALTON**<br>Attorney for Defendant |